**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DARREN VERDERBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | Hon. Judge |
| THE CITY OF CHICAGO, ILLINOIS, ) | |
| a municipal corporation, ) | |
| ) | JURY DEMANDED |
| Defendant. ) | |

## COMPLAINT

Darren Verderber ("Plaintiff" or "Verderber"), by and through his undersigned counsel, Nicollette Haines, Esq., DISPARTI LAW GROUP, P.A., complains as follows against Defendant, The City of Chicago, Illinois ("Defendant").

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12111, et seq.

2. Venue is proper under 28 U.S.C. § 1391 because the events and omissions giving rise to the claims herein have occurred in this judicial district, and because Defendant maintains places of operation within this judicial district.

## PARTIES

3. Plaintiff Verderber is a legal adult and resident of Illinois, employed by the City of Chicago as a Firefighter with the Chicago Fire Department ("CFD"), specifically within the Special Operations Division.

4. Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois and is Plaintiff's employer.

## ADMINISTRATIVE PREREQUISITES

5. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming disability discrimination based upon the factual allegations charged against Defendant.

6. Plaintiff timely filed his administrative charges on or about January 21, 2021 -- within 300 days -- after he was not permitted to return back to work beginning on August 4, 2020 and continuing up through the filing of his administrative EEOC charges.

7. A Right to Sue letter was issued by the EEOC on August 26, 2021. *See Exhibit 1 hereto.*

## FACTS COMMON TO ALL COUNTS

8. Plaintiff is a Firefighter within the CFD, specifically assigned to Squad #5 of the Special Operations Division.

9. The Special Operations Division is known as the "special rescue" branch of the CFD and comprises the Hazardous Materials Unit, the Air Sea Rescue Unit and the Technical Rescue Unit.

10. Plaintiff also maintains secondary employment with the Evergreen Park Fire Department and the National Urban Search and Rescue Response System ("USAR").

11. Plaintiff's secondary employment work status is contractually conditioned on Plaintiff maintaining active work status as a firefighter with the CFD.

12. At all times relevant, Plaintiff could perform the essential functions of his job as a firefighter on Squad #5 of the Special Operations Division.

13. As part of the requirements to ensure Plaintiff's placement on Squad #5, Plaintiff is required to submit to an annual physical exam, including tests related to Plaintiff's audio and visual functions, blood tests, x-rays, and stress test.

14. As part of the requirements to ensure Plaintiff's placement on Squad #5, Plaintiff submitted to a physical exam on July 23, 2020, including, but not limited to, a stress test.

15. During the course of the administration of the July 23, 2020 stress test, one of the cardiac monitor leads fell off of Plaintiff's chest.

16. As a result, Plaintiff's stress test results were negatively impacted and Plaintiff did not satisfactorily pass the stress test.

17. Immediately thereafter, Plaintiff requested that a second stress test be administered again that same day, on July 23, 2020, in order to yield an accurate analysis and test result.

18. However, Plaintiff's request that a second stress test be administered on July 23, 2020 was denied.

19. Consequently, the abnormal results from the July 23, 2020 improperly administered stress test were analyzed as part of Plaintiff's physical exam testing requirements.

20. As a result of such abnormal stress test results, Plaintiff was placed on a non-duty layup on or about July 31, 2020.

21. A non-duty layup is a work status that allows firefighters who are unable to work, due to a medical condition incurred outside of work, to receive full pay and benefits for a given period of time until they are medically cleared to return back to duty.

22. On that same day, on July 31, 2020, Plaintiff was also informed that an authorized medical release from Plaintiff's general practitioner and cardiologist were required in order for Plaintiff to return back to work to Squad #5.

23. Accordingly, Plaintiff immediately scheduled a doctor's visit with his general practitioner, Dr. Kindu Birhanu for July 31, 2020.

24. Pursuant to Plaintiff's medical consultation with Dr. Birhanu on July 31, 2020, Plaintiff was authorized to return back to work and provided with a written medical release supporting the same.

25. Additionally, Plaintiff scheduled a doctor's visit with cardiologist, Dr. Chadi Nouneh for August 3, 2020.

26. Pursuant to Plaintiff's medical consultation with Dr. Nouneh on August 3, 2020, Plaintiff was authorized to return back to work and provided with a written medical release supporting the same.

27. On August 4, 2020, Plaintiff submitted both corresponding medical releases to the CFD Medical Division.

28. Despite meeting all requirements to return back to work, Plaintiff was informed by CFD Medical Division Chief Jennifer Shulz and Nurse Practitioner Diane Jones that Dr. Nouneh's written medical release was insufficient since an echocardiogram was not ordered as part of his medical exam with Dr. Nouneh on August 3, 2020.

29. As neither Chief Jennifer Shulz or Nurse Practitioner Diane Jones had previously notified Plaintiff that a satisfactory echocardiogram result was required in order to return back to work, this was the first time Plaintiff was notified that he needed to submit to this additional medical request.

30. Despite this additional medical request, Plaintiff complied.

31. Consequently, on August 21, 2020, Plaintiff saw Dr. Kathleen Ward, a cardiologist, who ordered a new echocardiogram.

32. Pursuant to that August 21, 2020 echocardiogram, Plaintiff's test results were normal and within range.

33. Plaintiff then requested that all related medical records from Dr. Ward's office be submitted over to the CFD Medical Division on his behalf.

34. Although Plaintiff seemingly satisfied the echocardiogram test, Plaintiff was notified that he could still not return back to work.

35. Instead, on September 28, 2020, Plaintiff was notified by CFD Medical Division that he needed to complete a Thoracic Aortic Aneurysm test, an additional medical request, as it related to Plaintiff's cardiac heart.

36. In response, Plaintiff complied and scheduled a Thoracic Aortic Aneurysm test after consulting with Dr. Ward.

37. Consequently, Plaintiff submitted to a Thoracic Aortic Aneurysm test, as administered by Dr. Ward.

38. The results of said Thoracic Aortic Aneurysm test came back normal and within range.

39. Although Plaintiff seemingly satisfied the Thoracic Aortic Aneurysm test, Plaintiff was notified that he could still not return back to work.

40. In an attempt to get some answers, Plaintiff then spoke with Dr. Ward.

41. At that time, Dr. Ward informed Plaintiff that she was repeatedly warned by Nurse Practitioner Jones of the CFD Medical Division how "physically demanding" Plaintiff's job was and that Jones did not want Plaintiff diving or doing physical work.

42. From October 22, 2020 until November 6, 2020, Plaintiff took his scheduled furlough.

43. On October 29, 2020, without explanation, Plaintiff was placed on an extended layup.

44. From October 29, 2020 through February 25, 2021, the CFD Medical Division continued to delay Plaintiff's return back to work clearance and ordered Plaintiff to submit to additional

medical exam testing until Plaintiff was last ordered to obtain a medical release from his primary cardiologist in late February 2021.

45. In response, Plaintiff complied, and an authorized medical release form was again submitted to the CFD Medical Division in late February 2021.

46. As a result of the CFD Medical Division's rapidly changing and arbitrary medical exam requirements as they related to Plaintiff's cardiac health, Plaintiff was unlawfully targeted on the basis of having a perceived disability.

47. As a result of the CFD Medical Division's disability discriminatory treatment of Plaintiff, Verderber has suffered damages in the Count below.

## COUNT I – DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

48. Plaintiff incorporates Paragraphs 1 through 52 as if fully restated herein.

49. The ADA prohibits employers from "requiring a medical examination or making inquiries of an employee as to whether such employee is an individual with a disability...unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). *Nawara v. Cty. of Cook,* No. 17 C 2393, 2021 WL 1172742, at *8 (N.D. Ill. Mar. 29, 2021).

50. The EEOC enforcement guidelines state that a medical examination is job-related and consistent with business necessity when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Coffman v. Indianapolis Fire Dep't,* 578 F.3d 559, 565 (7th Cir. 2009).

51. At all times relevant, Plaintiff could perform the essential functions of his job as a firefighter on Squad #5.

52. At all times relevant, Defendant did not have a reasonable belief based on objective evidence that a medical condition would impair Plaintiff's ability to perform the essential functions of his job as a firefighter on Squad #5.

53. At all times relevant, Defendant did not have a reasonable belief based on objective evidence that Plaintiff would pose a threat due to a medical condition.

54. Plaintiff was placed on a non-duty layup on or about July 31, 2020, after his initial stress test was improperly administered and test results were not satisfactory.

55. Since August 4, 2020, Plaintiff was ordered by the CFD Medical Division to submit to rapidly changing and arbitrary medical exam requirements.

56. Despite complying with such requests in a satisfactory manner and without explanation, Plaintiff was placed on an extended layup, effective October 29, 2020.

57. At no time after August 4, 2020 – when Plaintiff complied with CFD's first request to obtain and submit authorized medical releases from Plaintiff's general practitioner and cardiologist -- did the CFD Medical Division have a legitimate, non-discriminatory reason for ordering Plaintiff submit to new and additional medical exam requirements in order for Plaintiff to return back to work.

58. From October 29, 2020 through February 25, 2021, the CFD Medical Division continued to delay Plaintiff's return back to work clearance and ordered Plaintiff to submit to additional medical exam testing until Plaintiff was last ordered to obtain a medical release form from his primary cardiologist in late February 2021.

59. In response, Plaintiff complied, and an authorized medical release form was again submitted to the CFD Medical Division in late February 2021.

60. As a result, Plaintiff was restored back to his position on Squad #5 on February 26, 2021.

61. During such period from July 31, 2020 through February 25, 2021, Plaintiff's layup work status with CFD prevented him from working his secondary employment with the Evergreen Park Fire Department and USAR.

62. As a result of CFD's conduct, Verderber has suffered damages, to include, but not limited to, loss of pay and benefits, compensatory damages in the form of emotional distress, outrage, shame, humiliation, embarrassment, mental anguish, pain and suffering, as well as lost wages related to Plaintiff's inability to return back to work at Evergreen Park Fire Department and USAR, in addition to medical and attorneys' fees.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Honorable Court enter judgment in his favor, and against Defendant City of Chicago, and enter and order all appropriate relief, to include backpay and back benefits as appropriate, compensatory damages in the amount of $300,000, make whole relief for all losses resulting from the disability discrimination, injunctive relief requiring Defendant to cease and desist from violating the ADA, reasonable attorneys' fees and litigation costs, pre-judgment interest and all other available and appropriate relief.

**JURY DEMANDED**

                              Respectfully submitted,

                              **DARREN VERDERBER**
                              /s/ Nicollette M. Haines
By: _____
                              Nicollette M. Haines, Esq.
                              His Attorney

*Nicollette M. Haines, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 334
F: (312) 846-6363
E: Nicollette@dispartilaw.com



**U.S. Department of Justice**

Civil Rights Division

---

*Disability Rights Section – 4 Con*
*950 Pennsylvania Ave, NW*
*Washington, DC  20530*

August 26, 2021                                    **EXHIBIT 1**

DJ# 205-24-0
**VIA EMAIL:**  **Nicollette@dispartilaw.com**

Darren Verderber c/o
Nicollette Haines, ESQ
Disparti Law Group
121 W. Wacker Drive., #2300
Chicago, IL  60601

Re:   EEOC Charge Against:     Chicago Fire Department
      EEOC No.:                440-2021-01906
      DJ#:                     205-24-0

Dear Mr. Verderber:

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge, and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you or your attorney has specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq.  If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.  This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

If you or your attorney has any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to: Chicago District Office, U.S. Equal Employment Opportunity Commission.  Please note, due to COVID-19 there may be a delay in obtaining copies of the case file.

      Enclosed you will find a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA). We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

                                          Sincerely,
                                            Kristen Clarke
                                            Assistant Attorney General
                                            Civil Rights Division

                            BY: /s/ Celeste A. Adams-Simmons
                                  Celeste A. Adams-Simmons
                                  Senior Investigator
                                  Disability Rights Section

Enclosures:
      Notice of Rights under the ADAAA

cc:      Chicago Fire Department
          EEOC- Chicago District Office