UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARREN VERDERBER,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>    Defendant. | No. 21-cv-06211<br>Judge Franklin U. Valderrama |

## MEMORANDUM OPINION AND ORDER

Darren Verderber (Verderber), a firefighter employed by the Chicago Fire Department (CFD), brings this disability discrimination claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.*, against the City of Chicago (City), after being placed on a non-duty layup—effectively, temporary paid medical leave—following a medical examination that resulted in unsatisfactory results. The City moves to dismiss the Complaint under Federal Rule 12(b)(6) for failure to state a claim. For the following reasons, the Court grants the City's motion.

## Background

Verderber is a firefighter employed by the CFD, assigned to the Special Operations Division, also known as the "Special rescue branch of the CFD."[1] R. 1, Compl. ¶¶ 8, 9. Verderber also maintains secondary employment with the Evergreen

---

[1] The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Verderber. *Smith v. City of Chicago*, 3 F.4th 332, 334 n.1 (7th Cir. 2021) (internal citation omitted).

Park Fire Department and the National Urban Search and Rescue Response System (USAR), where his employment is contractually conditioned on Verderber maintaining active work status as a firefighter with the CFD. *Id.* ¶¶ 10–11.

CFD requires members of the Special Operations Division to undergo an annual physical exam. Compl. ¶ 13. The physical exam includes a stress test *Id.* ¶¶ 8, 13. Verderber underwent his annual physical exam on July 23, 2020. *Id.* ¶ 14. Verderber alleges that during the stress test portion of the July 23 exam, one of the cardiac monitor leads fell off Verderber's chest, negatively impacting the results and causing Verderber to "not satisfactorily pass" the stress test. *Id.* ¶¶ 15–16. That same day, Verderber requested a second stress test, but his request was denied. *Id.* ¶ 18.

Because of the abnormal results, Verderber was placed on a non-duty layup on or about July 31, 2020. Compl. ¶ 20. A non-duty layup is a work status that allows firefighters who are unable to work due to a medical condition incurred outside of work to receive full pay and benefits until they are medically cleared to return to work. *Id.* ¶ 21.

From August 2020 to February 2021, Verderber was required to submit to various medical consultations, examinations and tests and obtain numerous medical releases. Compl. ¶¶ 57–58. Beginning on July 31, 2020, Verderber scheduled a medical consultation with his general practitioner, after which the doctor provided a medical release authorizing his return to work. *Id.* ¶¶ 23–24. Verderber also scheduled an appointment with his cardiologist on August 3, 2020, who also gave him a written medical release. *Id.* ¶¶ 25–26. However, after submitting both medical

2

releases on August 4, 2020, the CFD Medical Division informed Verderber that the medical releases were insufficient without an echocardiogram. *Id.* ¶¶ 27–28.

On August 21, 2020, Verderber saw a new cardiologist who performed an echocardiogram that produced normal and within range test results. Compl. ¶¶ 31–32. Following submission of the normal echocardiogram's results to the CFD, Verderber was informed on September 28, 2020 that he also needed to complete a Thoracic Aneurysm test. *Id.* ¶ 35. Verderber complied, and submitted to the test, which came back normal and within range. *Id.* ¶¶ 36–38. However, the CFD still did not allow Verderber to return to work and warned him about the "physically demanding" work of his job. *Id.* ¶¶ 39, 41. Verderber underwent additional testing between October 29, 2020, when he was placed on extended layup, and February 25, 2021. *Id.* ¶¶ 43–44. Verderber was told in late February 2021 to obtain a new medical release from his primary cardiologist, and Verderber complied. *Id.* ¶¶ 44–45.

Verderber was allowed to return to duty on February 26, 2021, following his final medical release from his cardiologist. Compl. ¶ 60. Although Verderber received full pay and benefits from the CFD during his layup, Verderber was unable to work his secondary employment during the same period due to the conditions of his secondary employment contract. *Id.* ¶ 61.

Verderber filed suit against the City, asserting a disability discrimination claim under the ADA, 42 U.S.C. § 12112 *et seq*. *See* Compl. The City now moves to dismiss the Complaint pursuant to Rule 12(b)(6). R. 13, Mot. Dismiss.

3

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

**I. Disability Discrimination in Violation of Title I the ADA**

Verderber alleges that he was impermissibly discriminated against when he was placed on a non-duty layup on or about July 31, 2020, following his unsatisfactory results from a faulty stress test. Compl. ¶¶ 16, 19, 20. He alleges that he was then ordered to submit to rapidly changing and arbitrary medical exam requirements, despite the City having no reasonable belief based on objective evidence that Verderber would pose a threat to others due to a medical condition. *Id*. ¶¶ 53, 55.

4

Verderber further alleges that the City continued to delay his return to work by placing him on extended layup from October 29, 2020 until February 25, 2021. *Id.* ¶¶ 56, 58. Finally, Verderber alleges that, because of his layup status with the CFD, he was unable to work his secondary employment. *Id.* ¶ 61.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, "disability" means, in part, "being regarded as" having "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102. To state a claim under Title I of the ADA, Verderber must allege that: (1) he is disabled; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019).

The City advances two primary arguments in support of dismissal of the Complaint. First, the City argues that the Complaint should be dismissed because it does not plausibly allege that the City regarded Verderber as having a disability. Mot. Dismiss at 2. Second, the City asserts that the Complaint does not allege an adverse employment action. *Id.* The Court addresses each argument in turn.

5

### A. Perceived disability

An individual is "'regarded as having [a disability]' if the individual establishes that he or she has been subjected to an action prohibited . . . because of an actual or perceived physical or mental impairment, whether or not that impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A), 29 C.F.R. § 1630.2(l)(1); *see Steffen v. Donahoe*, 680 F.3d 738, 744 (7th Cir. 2012).

The City contends that Verderber neither alleges that he is disabled nor alleges that the City regarded Verderber as disabled. *Id.* The City points out that in the seven months following the failed stress test, Verderber underwent several normal tests results, indicating no medical condition at all, thus his allegations fail to support his conclusion that the City perceived Verderber as disabled. *Id.* The City also posits that even if it had regarded Verderber as disabled, the medical condition would not fall under the protection of the ADA because it was "transitory and minor." *Id.* at 5 (citing *Steffen*, 680 F.3d at 743). The Court disagrees.

While it is true that Verderber does not allege that he had a medical condition, Verderber does allege that he was put on non-duty layup work status, which allows firefighters to continue receiving full pay when they are unable to work due to a *medical condition* incurred outside of work. Compl. ¶ 21 (emphasis added). Furthermore, after being placed on layup, Verderber was allegedly informed that he was required to provide the City with general practitioner and cardiologist medical releases before being allowed to return to work. *Id.* ¶ 22. From August through

6

February, Verderber continued to complete additional medical testing, including an echocardiogram and Thoracic Aortic Aneurysm test. *Id.* ¶¶ 29, 35.

At this stage of the proceedings, the Court is obligated to accept Verderber's factual allegations as true and to interpret any reasonable inferences derived therefrom in his favor. Consequently, the Court finds that in his Complaint Verderber has plausibly alleged that the City regarded him as disabled. *See Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008).

The City next argues that even if it did regard Verderber as disabled, the claim should be dismissed because the ADA's protections do "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B); *Steffen*, 680 F.3d at 743. The ADA defines a "transitory impairment" as "an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

To establish a defense of "minor and transitory" impairment, the City is required to establish that the impairment is *both* transitory and minor. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 251 (3rd Cir. 2020) ("Consistent with the language of the ADA and its implementing regulations, the Court treated 'transitory' and 'minor' as separate and distinct inquiries required to meet the 'transitory and minor' exception to 'regarded as' claims[.]") (analyzing *Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698 (7th Cir. 2015)).

Verderber alleges that he was placed on layup for seven months—from July 31, 2020 through February 25, 2021. Compl. ¶ 61. In a footnote, the City acknowledges that it has not found any relevant caselaw holding that seven months

7

is automatically "more than transitory." Mot. Dismiss. at 4. The plain language of the statute undermines the City's contention. That is, to be considered transitory, an impairment should be 6 months or *less*. Therefore, Verderber's alleged impairment does not qualify.

In addition, as Verderber argues, the "barrage of cardiac tests" that the City ordered indicates that the City did not think that Verderber's perceived condition was transitory or minor. R. 17, Resp. at 6. And the numerous tests, all related to Verderber's cardiac health, indicate that the City "did not view [Verderber's] perceived impairment as minor, but rather one that would greatly limit [Verderber]." *Id.* at 7. In conjunction with the layup that extended for a period of seven months, Verderber's perceived impairment cannot be considered minor or transitory. *Id.*

All in all, based on the extensive tests Verderber was required to undergo, his leave of absence totaling seven months, and the applicable law, the Court finds that the City has failed to establish a "transitory and minor" defense based on the well-pled allegations in the case. Verderber has plausibly alleged that the City regarded him as disabled.

### B. Materially Adverse Employment Action

Next, the City argues that Verderber fails to plausibly allege any materially adverse employment action. Mot. Dismiss at 5. "An adverse employment action is one that significantly alters the terms and conditions of the employee's job. . . [t]he action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008). "Materially

8

adverse employment actions include cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished." *Kurtzhals v. Cty of Dunn,* 969 F.3d 725, 729 (7th Cir. 2020) (internal citations omitted).

Verderber alleges, as adverse employment actions, the fact that the City required him to submit to "rapidly changing and arbitrary" medical examinations, prevented him from returning to work, prevented him from working any secondary employment for seven months, and forced him to incur out-of-pocket medical expenses, all of which was "unduly burdensome, intrusive, or illegitimate." Resp. at 8–9.

The Court first addresses Verderber's allegation that the City's requirement that he undergo a series of tests constitutes an adverse action. In his Complaint, Verderber alleges that in violation of the ADA, he was required to undertake a series of medical examinations that were not job-related or a business necessity. Compl. ¶ 49 (citing 42 U.S.C. § 12112(d)(4)(A)). He further alleges that "at all times," he was able to perform his essential job functions. *Id.* ¶ 51.

The City argues that general fitness-for-duty examinations for public safety positions are not materially adverse. R. 18, Reply at 2–3 (citing *See v. Illinois Gaming Bd.*, 29 F.4th 363, 370 (7th Cir. 2022) ("We have repeatedly held that the ADA permits fitness-for-duty examinations when public-safety employees are involved.")); *see Freelain*, 888 F.3d at 903 ("We have accepted [psychological evaluations] when they are used to determine a worker's ability to perform work functions safely."); *Coffman*, 578 F.3d at 565 ("We have acknowledged that inquiries into an employee's psychiatric

9

health may be permissible when they reflect concern for safety of employees and the 'public at large.'").

Verderber responds that he was allegedly required "to submit to rapidly changing and arbitrary medical exam requirements as they related to Plaintiff's cardiac health, without justification," which were outside the scope of his employment. Resp. at 8. Verderber argues that the medical examinations following the stress tests were outside the scope of his normal physical medical exams. *Id.* at 8.

The Court agrees with the City that Verderber has failed to plausibly allege a materially adverse employment action. True, Verderber has alleged that he was required to undergo a series of medical examinations after his failed physical exam. But courts have repeatedly held that the ADA permits fitness for duty examinations for public safety employees. *See See*, 29 F.4th at 370. Nor has he alleged that other similarly situated firefighters were subjected to less testing after a failed stress test. Furthermore, in his Complaint, Verderber alleges that he was warned by the CFD how "physically demanding" his job was, which supports that the series of medical examinations were within the scope of Verderber's employment. Compl. ¶ 41. Thus, Verderber has not plausibly alleged that the series of medical examination requirements was a materially adverse employment action.

The City also argues that a *fully paid* medical leave, as opposed to an unpaid leave is not a materially adverse action. Mot. Dismiss at 5 (citing *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 902–03 (7th Cir. 2018) (misclassification of a paid leave of

10

absence and credited sick days were not considered a materially adverse employment action)); *see Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (finding the plaintiff's placement on paid administrative leave while waiting for "results of his fitness-for-duty psychological examinations did not constitute a *materially* adverse action.") (emphasis in original). Next, the City maintains that placing Verderber on non-duty layup was reasonably related to his employment and not a materially adverse action. Mot. Dismiss at 6 (citing *Freelain* and *Silk v. City of Chicago*. 194 F.3d 788 (7th Cir. 1999)).

Verderber counters that being unable to return to work is a materially adverse employment action. Resp. at 8–9. He emphasizes that, per *Tamayo*, his Complaint only needs to allege that "the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. Resp. at 8 (citing *Tamayo*, 526 F.3d at 1084). Verderber contends that using an "objective test," the Court should find that the allegations asserted in the Complaint meet the standard of material adverse employment action, defined as "one that significantly alters the terms and conditions of the employee's job." Resp. at 9 (citing *Owens v. Dep't of Hum. Rts.*, 936 N.E.2d 623, 640 (Ill. App. Ct. 2010)).

As a preliminary matter, the Court notes that Verderber does not allege, contrary to the City's suggestion, that being placed on paid medical leave was an adverse employment action. However, the Court agrees with the City that placing Verderber on a non-duty layup medical leave was not a materially adverse

11

employment action per Seventh Circuit precedent. *See Freelain*, 888 F.3d 895; *Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999).

In *Freelain*, the plaintiff, a Chicago police officer, was ordered to undergo a psychological evaluation before returning to work, after he took several weeks off due to stress-related medical symptoms. *Id.* at 904. The plaintiff filed suit asserting claims under the Family and Medical Leave Act and the ADA. *Id.* In affirming the district court's grant of defendant's motion for summary judgment, the Seventh Circuit found that plaintiff had failed to establish that he suffered a materially adverse employment action. The court noted that plaintiff had not alleged any demotion in rank or diminution of salary. The court found that referring the plaintiff for a psychological evaluation was not a materially adverse action. *Id.* Rather, observed the court, "[g]iven the risks posed by an officer who is not well enough to work, the psychological examination of fitness for duty in this case served a legitimate purpose." *Id.* at 904. The village retained the authority to approve or disapprove of secondary employment." *Id.* at 905.

In *Silk v. City of Chicago*, the plaintiff, a police officer, suffered from sleep apnea and was limited to working only the day shift as a result. The plaintiff also had a secondary employment teaching at the state university once per week. 194 F.3d at 795. Due to his medical condition, the plaintiff was ordered to stop teaching and suspended for five days for violation of the secondary employment rule. *Id.* at 796. Plaintiff brought a claim under the ADA, alleging that the defendant discriminated and retaliated against him by prohibiting him from his secondary employment. *Id.* at

12

794. The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendant. The court noted that plaintiff had shown no adverse action as to his police work as he kept the same job at the same salary and location. *Id*. at 801.

While Verderber argues that *Freelain* and *Silk* are distinguishable, the Court disagrees and finds *Freelain* and *Silk* instructive. While they are both summary judgment cases, and the motion before the Court is a Rule 12(b)(6) motion, the Seventh Circuit has explained that courts can rely "on summary-judgment cases at the pleadings stage to explain the substantive legal standards that apply to the case." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). In this case Verderber has failed to allege a materially adverse employment action. Verderber has not alleged any diminution in rank or salary or anything else related to his placement on non-duty layup. Notably, Verderber fails to cite any authority in support of his contention that the City's actions constituted a materially adverse employment action.

Verderber also asserts in his Response that making him pay out-of-pocket medical expenses, including co-payments pursuant to an insurance policy, was a materially adverse employment action. Resp. at 8. However, he cites no law for that proposition. The City replies by citing *Stapleton v. CSX Transportation, Inc.*, 530 F.Supp.3d 1128, 1145–46 (M.D. Fl. 2011) (applying Supreme Court's standard for adverse employment action under Title VII to the FRSA and citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Reply at 7. In *Stapleton*, a Florida district court decided that an employer's refusal to cover medical co-pays and

13

deductibles was not an adverse employment action for a Federal Railroad Safety Act (FRSA) claim.

Notably, in his Complaint, Verderber did not allege the out-of-pocket expenses as an adverse employment action. Instead, he first raised the argument in his Response to the City's Motion to Dismiss. Resp. at 2. "'It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss,' and Plaintiffs cannot shore up the defects in the amended complaint by adding new 'facts' to the background section of its response brief." *Martinez v. Sgt. Hain*, 2016 WL 7212501, at *7 (N.D. Ill. Dec. 13, 2016) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). No matter, as the Court agrees with the City that paying out-of-pocket expenses in this case is not a materially adverse employment action.

Apparently, the issue of whether payment of out-of-pocket expenses can constitute an adverse employment action has not been addressed in the Seventh Circuit. While the City cites *Stapleton* in support of its proposition, the Court finds *Blackwell v. SecTek Inc.*, a case from the District of Columbia, persuasive. In *Blackwell*, the plaintiff filed an ADA claim and for his adverse employment action, alleged, among other things, that he was required to pay out-of-pocket co-pay expenses to complete a stress test for work. The court granted the defendant's motion to dismiss finding that an employee's payment of employer-imposed medical examinations did not rise to the level of an adverse employment action. 61 F. Supp. 3d 149, 159 (D.D.C. 2014). The court held that although the insurance co-payment "might have inflicted direct economic harm on [the plaintiff], it was not a significant

14

change in employment status akin to hiring, firing, failing to promote, or reassignment with significantly different responsibilities." *Id.* at 159–60 (internal quotation marks omitted) (citing *Burlington*, 548 U.S. at 64); *see also Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 245–46 (4th Cir. 1997) (affirming grant of defendant's motion for summary judgment and finding that an employer's required fitness for duty exam met the ADA's standard because it was "clearly job related and a business necessity under § 12112(d)(4) of the Code," despite the employer "inform[ing] [the employee] that he would be responsible for paying for the evaluation."). In short, Verderber has not plausibly alleged that the out-of-pocket medical costs are a materially adverse employment action.

All in all, Verderber has not plausibly pled a materially adverse employment action, and so has not stated a claim under the ADA.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted. The Complaint is dismissed without prejudice. Plaintiff is given leave to file an amended complaint on or before April 17, 2023.

Dated: March 20, 2023

*[signature]*

United States District Judge
Franklin U. Valderrama

15